# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

MATTHEW DEVITO,
and PRECISE ROOF COATING, LLC.,

     Plaintiffs,

vs.

US COATING SPECIALISTS, LLC
and JEFFREY MILLER,
and ANTHONY FLETT,

     Defendants.
_____/

CASE NO:
JUDGE:
MAGISTRATE JUDGE:

## **COMPLAINT**

Plaintiff, MATTHEW DEVITO ("DeVito" or "Plaintiff" or "Plaintiffs"), and PRECISE ROOF COATING, LLC. ("Precise Roof Coating", or "Plaintiff", or "Plaintiffs"), by and through his undersigned counsel, sues Defendants, US COATING SPECIALISTS, LLC ("US Coating", "Defendant", or "Defendants"), and JEFFREY MILLER ("Miller", "Defendant" or "Defendants"), and ANTHONY FLETT ("Flett", "Defendant", or "Defendants"), and states as follows:

### **Jurisdiction and Venue**

1. Plaintiff, DeVito, is a citizen of the State of Florida, residing in St. Lucie County.

1A. Plaintiff, Precise Roof Coating, is a limited liability corporation of the State of Florida, with its principal place of business located in St. Lucie County.

2. Defendant, US Coating, is a limited liability corporation of the State of Florida, with its principal place of business located in St. Lucie County.

3. Defendant, Miller, is a citizen of the State of Florida, residing in St. Lucie County.

3A. Defendant, Flett, is a citizen of the State of Florida, residing in St. Lucie County.

4. The acts complained of herein occurred during Plaintiff's employment with Defendants in **St. Lucie** County.

5. Jurisdiction is based upon 28 USC § 1331, providing for federal question jurisdiction of the federal district courts. More specifically, jurisdiction over Counts I – II are predicated under the FLSA, 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Jurisdiction over Count V, for unfair competition are predicated upon the Lanham Act, 15 U.S.C. §§ 1114, and 1125 (a).

6. Jurisdiction over Counts III – IV are predicated upon the Court's supplemental jurisdiction.

6A. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since the named Defendants conducted business in this judicial district and the activities complained of occurred within this judicial district, and within the Ft. Pierce division of this judicial district.

## STATEMENT OF FACTS

7. DeVito was employed initially as a construction worker, beginning in January 2018.

8. Initially, DeVito was actually paid overtime, confirming his status as a non-exempt employee.

9. Paystubs in DeVito's possession reflect payment of time and one-half for hours over 40 per week until approximately October 2018.

10. At about this time, the Defendants agreed to a request for a raise in the hourly rate.

11. However, Defendants advised that the increase in the hourly rate came with the condition DeVito would work at the new hourly rate as a salary for 40 hours, regardless of how many hours he actually worked during the week.

12. DeVito objected to the referenced condition.

13. Since DeVito did not know that this condition was a violation of the FLSA, he acquiesced and continued employment.

14. From the period of October 2018, and throughout the period of employment during 2019, DeVito often worked in excess of 40 hours a week, but was only paid for 40 hours.

15. By way of illustration only as DeVito's possession of time records is incomplete, for the week 10/1/18 – 10/7/19, DeVito worked 46.12 hours and was paid for 40 hours. For the week of 12/10/18 – 12/16/18, he worked 41 hours, and for 12/17/18 – 12/23/18, he worked 43 hours. For the week of 4/22/19 – 4/28/19, DeVito worked 51 hours. For the week of 7/29/19 – 8/4/19, DeVito worked 54 hours and the next week he worked 52 hours. For the period of 10/7/19 – 10/13/19, DeVito worked 59 hours. These are only illustrations.

16. During each week, he was paid for only 40 hours

17. Defendants are presumed to maintain complete and accurate time records from which the actual amount due to Plaintiff may be computed.

18. Defendants have an obligation under the FLSA to maintain complete and accurate time records from which the actual amount due to Plaintiff may be computed.

19. Prior to initiating legal action, Plaintiff demanded the overtime due to him through two separate counsel. Defendants, through counsel, refused to pay the overtime due to Plaintiff.

20. Plaintiff has retained undersigned counsel and agreed to pay it a reasonable attorneys' fee.

21. All conditions precedent to suit, if any, have been waived or otherwise satisfied.

22. Prior to initiating suit, Plaintiff, through his counsel, made a good-faith effort to amicably resolve this matter with Defendants, through their counsel.

## COUNT I
### (Violation Of 29 U.S.C. § 207; Overtime Compensation)
### (DeVito v. Defendants)

23. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-22, inclusive, as if fully set forth herein.

24. This is a proceeding for monetary damages to redress the deprivation of rights secured to Plaintiff by the maximum hour provisions of Section 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*., ("FLSA"). Plaintiff seeks to recover unpaid back wages, an additional equal amount as liquidated damages, and

reasonable attorney's fees and costs, in addition to any injunctive and/or such other relief as the Court may determine is appropriate.

25. Plaintiff is a former employee of Defendants and brings the FLSA action on behalf of himself and other current and/or former employees of the Defendants, similarly situated to him, for compensation and other relief under the FLSA.

26. At all times material hereto, Defendant, US Coating, was engaged in commerce as defined with §§ 203(r) & 203(s) of the FLSA.

27. At all times material hereto, Defendant, Miller, was an owner/manager of the US Coating, and regularly directed its day-to-day activities.

28. At all times material hereto, Defendant Flett, was a supervisory employee of US Coating, and regularly directed its day-to-day activities on site.

28. At all times material hereto, Defendants were "engaged in commerce" within the meaning of §6 and §7 of the FLSA.

29. At all times material hereto, Plaintiff was an "employee" of Defendants within the meaning of FLSA.

30. At all times material hereto, Defendants were the "employer" within the meaning of FLSA.

31. Defendants was, and continue to be, an "employer" within the meaning of FLSA.

32. At all times material hereto, Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

33. At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by Defendants.

34. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

35. Plaintiff was employed by the Defendants for the period of time set forth in the Statement of Facts.

36. Plaintiff regularly worked overtime; more than 40 hours in a week.

37. Defendants repeatedly advised that they did not pay overtime and asserted that Plaintiff was an exempt employee.

38. Plaintiff was a non-exempt employee as defined by the FLSA, and therefore should have been compensated at the statutory rate of time and one-half for all hours worked in excess of the maximum hours allowed by the FLSA.

39. From the earliest of the named Plaintiff's employment, through the date of his termination in 2019, Plaintiff was required and/or permitted to and did, in fact, work in excess of 40 hours per week but was not paid for any overtime.

40. Defendants violated Title 29. U.S.C. § 207, during 2012, in that: (a) Plaintiff worked in excess of the maximum hours provided by the FLSA, (b) no provisions have been made by Defendants to properly pay Plaintiff at the statutory rate of time and one-half for those hours that he worked in excess of the maximum hours provided by the FLSA; and (c) no payments have been made to Plaintiff by Defendants at the statutory rate of time and one-half for the hours that he worked in excess of the maximum hours provided by the FLSA.

41. Further, at all times material hereto, Defendants were responsible for maintaining complete and accurate time records. Upon information and belief, Defendants failed to keep appropriate time records as required by section 11 of the FLSA.

42. The records concerning the number of hours actually worked by Plaintiff can therefore only be estimated and established by circumstantial evidence.

43. Therefore, Plaintiff is unable to state the exact amount due and owing to him. Plaintiff proposes to obtain such information by appropriate discovery proceedings to be taken promptly in this case.

44. Plaintiff has retained the law firm of Stuart M. Address, P.A., to represent him in this litigation and has agreed to pay the firm a reasonable fee for its services.

45. Defendants have failed to properly disclose or apprise Plaintiff of Plaintiff's rights under the FLSA and has intentionally cheated Plaintiff of wages and overtime compensation due to him.

46. Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate of pay for the hours worked in excess of forty (40) hours per weeks when it knew, or should have known, such was, and is due.

47. Plaintiff is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**WHEREFORE,** Plaintiff, Matthew DeVito, respectfully requests that judgment be entered in his favor against Defendants, jointly and severally, as follows:

  a. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

  b. Awarding Plaintiff overtime compensation due him for the hours in excess of forty that Plaintiff worked but for which he has not been compensated at the statutory rate of time and one half including, without limitation, all hours that Plaintiff was required to and/or permitted to work off of the clock;

  c. Awarding Plaintiff an equal amount as liquidated damages;

  d. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

  e. Awarding Plaintiff post judgment interest;

  f. Awarding appropriate injunctive relief; and

  g. Ordering any other and further relief that this Court deems just and proper.

## COUNT II
**(Violation Of 29 U.S.C. § 216(b); Overtime Compensation; Statutory Class Action)**
**(DeVito vs. Defendants)**

48. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-22, inclusive, as if fully set forth herein.

49. Plaintiff brings this count on behalf of himself and other employees and former employees of Defendant similarly situated for overtime compensation and other relief pursuant to the FLSA.

50. The additional persons who may become Plaintiffs in the action are non-exempt employees of Defendants who worked and, in some instances, continue to work in excess of forty (40) hours during a work week and who were not paid one and one- halftime

their regular rates of pay for the hours they worked in excess of forty hours as mandated by 29 U.S.C. §207.

51. At all times material hereto, Defendants failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, with respect to those similarly situated to the named Plaintiff by virtue of the management policy, plan or decision that intentionally provided for the compensation of such employees as if they were exempt from coverage under 29 U.S.C. §§201 through 219, disregarding the fact that they were not exempt.

52. Based upon information and belief, the employees and former employees of Defendant similarly situated to Plaintiff were paid straight time and expected to work in excess of forty (40) hours per week without being paid at the rate of one and one-half times their regular rate of pay for those hours exceeding forty (40) hours per week.

53. Upon information and belief, this practice if widespread and condoned by the Defendants' senior management.

54. Records, if any, concerning the actual number of hours worked by Defendants' employees and former employees and the actual compensation paid to Defendants' employees and former employees similarly situated to Plaintiff are in the possession, custody and control of Defendants and/or as a result of Defendants' failure to maintain adequate records would need to be demonstrated by circumstantial evidence obtained through discovery.

55. All similarly situated employees are owed their overtime rates for each overtime hour that they worked, but were not paid at the statutory rate of one and one-halftimes their regular rate of pay.

56. Due to the intentional, willful and unlawful acts of Defendants, all similarly situated employees have suffered damages and will continue to suffer damages and incur attorney's fees and costs.

57. As a direct and proximate result of Defendants' willful disregard of the FLSA, all similarly situated employees are entitled to liquidated damages in an equal amount to the amount by which each similarly situated employee or former employee has been damaged.

**WHEREFORE**, those similarly situated employees and former employees who have or will opt in to this action demand that judgment be entered against Defendants:

a. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

b. Awarding Plaintiffs overtime compensation due her for the hours in excess of forty that Plaintiff worked but for which she has not been compensated at the statutory rate of time and one half including, without limitation, all hours that Plaintiff was required to and/or permitted to work off of the clock;

c. Awarding Plaintiffs an equal amount as liquidated damages;

d. Awarding Plaintiffs reasonable attorneys' fees, costs, and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

e. Awarding Plaintiffs post judgment interest;

      f.      Awarding appropriate injunctive relief; and

      g.      Ordering any other and further relief that this Court deems just and proper.

## COUNT III
### (Defamation)
### (DeVito v. Defendants)

58.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-7, inclusive, as if fully set forth herein.

59.    Beginning during January 2020, Defendant Miller, and Defendant Flett, made statements to US Coating's office manager, and others, to the effect that DeVito stole approximately $100,000 worth of silicone and other materials and supplies from stole 100,000 dollars' worth of silicone and other materials and supplies from US Coating upon separation of employment.

59A.    These statements constitute defamation "per se".

60.    The individual Defendants further made statements to the office manager and others to the effect that DeVito was a "bad person" and that he "stole from them" and that they were going to "shut down his new business before it even gets started".

61.    The foregoing statements contained in the preceding paragraph evidence an ill will and malicious intent sufficient to entitle DeVito to recover punitive damages, in addition to any compensatory damages to which he may be entitled.

62.    Thereafter, to facilitate the threat, US Coating filed a lawsuit against DeVito and his new company, Precise Roof Coating, LLC., in the Nineteenth Judicial Circuit for St. Lucie County.

63. After DeVito threatened to initiate various counterclaim causes of action, US Coating filed a voluntary dismissal of the state court action on March 23, 2020.

64. The voluntary dismissal of the state court action, before DeVito was even required to respond to the Complaint, is evidence of the ill will and malicious intent of Defendants in making their defamatory statements about DeVito.

65. Further, on or about January 24, 2020, Defendants engaged the assistance of the police to effect service of process of the state court action falsely stating to the police that the process server required assistance because a prior effort to serve resulted in DeVito coming outside with a firearm to threaten the process server.

66. This lie also constitutes a defamatory statement, is defamation per se, and evidences the ill will and malicious intent of Defendants sufficient to entitle DeVito to an award of punitive damages.

67. On January 30, 2020, DeVito learned that Flett again repeated the lies concerning DeVito's alleged theft of materials from US Coating to various employees of US Coating.

68. On February 18, 2020, DeVito was engaged in work for Precise Roof Coating, as its owner, and noticed a drone flying overhead which was seemingly focusing in overhead the location where DeVito was engaged in business activities for a client.

69. DeVito contacted the owner of the property on which he was working, someone who he knew also had a relationship with Flett, and who confronted Flett regarding the drone.

70. Flett admitted that the drone belonged to US Coating, and that he sent it to watch DeVito and prove that DeVito was using stolen materials from US Coating.

71. Flett further stated that the owner of the property should never have hired DeVito and that DeVito was a "thief" who was trying to "extort" money from US Coating.

72 The preceding statements by Flett also constitute defamatory statements, are defamation per se, and evidence the ill will and malicious intent of Defendants sufficient to entitle DeVito to an award of punitive damages.

73. US Coating has liability for the statements made by both Miller and Flett under the doctrine of respondeat superior.

74. The statements made by Miller and Flett were made in the ordinary course of their duties for US Coating.

**WHEREFORE,** Plaintiff, Matthew DeVito, respectfully requests that judgment be entered in his favor against Defendants, jointly and severally, for damages, both actual (compensatory) and punitive, for costs, and for any such other relief which the Court determines is proper.

## COUNT IV
**(Common Law Unfair Competition)**
**(DeVito and Precise Roof Coating Against US Coating)**

75. Plaintiffs, DeVito and Precise Roof Coating, hereby incorporate by reference the allegations contained in paragraphs 1-7, and 60-74, inclusive, as if fully set forth herein.

76. The actions described in paragraphs 60-74 also constitute an effort by US Coating to unfairly compete with DeVito's new business venture, Precise Roof Coating.

77. By engaging in the activities described in paragraphs 60-74, US Coating sought to inhibit the ability of DeVito to fairly compete against it through his new business venture, Precise Roof Coating.

78. Indeed, by its actions, US Coating sought to destroy in its infancy the business of Precise Roof Coating, sufficient that DeVito could not recover.

79. This motive is evidenced by the various statements that DeVito's business would be stopped before it ever got off the ground.

80. Separately, on March 10, 2020, DeVito learned that on January 15, 2020, US Coating had purchased a domain name; *preciseroofcoatin*g.com.

81. The domain name purchased by US Coating was the actual business name of DeVito's new business and would reasonably have been expected to be acquired by DeVito and Precise Roof Coating when it was ready to create a website.

82. The acquisition of the domain name was done by US Coating with the intent on unreasonably interfering with DeVito and Precise Roof Coating's ability to fairly compete with US Coating.

83. In addition, upon acquiring the domain name preciseroofcoating.com, US Coating affirmatively arranged for all those who typed in preciseroofcoating.com to re automatically re-directed to US Coating's own domain and website uscoatingspec.com.

84. The affirmative act to cause anybody seeking to locate Precise Roof Coating at its supposed website and automatically re-direct them to US Coating's website without making the re-direction obvious constitutes an act of unfair competition by US Coating against DeVito and Precise Roof Coating.

85. Two days later, US Coating filed suit in state court, as referenced in paragraphs 62-64, against DeVito and Precise Roof Coating.

86. The timing of the statements made by Miller and Flett, the acquisition of the likely web domain name for Precise Roof Coating, and the initiation of suit in state court against DeVito and Precise Roof Coating, represent a willful and intentional plan in an effort to destroy DeVito's ability to work in his areas of expertise and the his ability to make his new business venture, Precise Roof Coating, a success.

87. Upon learning of US Coating's acquisition of the preciseroofcoating.com domain and its re-direction of any "hits" on that web domain to its own website, uscoatingspec.com, DeVito and Precise Roof Coating had counsel issue a cease & desist letter to US Coating, threatening litigation if the re-direction was not immediately terminated and the preciseroofcoating.com ownership relinquished so that DeVito and Precise Roof Coating could acquire it.

88. Caught with their proverbial pants down and with their proverbial hands in the cookie jar, US Coating terminated the re-direction of any site traffic to its own website; but it neither then nor now withdrew its ownership of the domain name. A search to acquire the domain name reveals that it would have to be purchased from Defendants.

89. The foregoing action of US Coating in immediately ceasing the re-direction of traffic from what consumers would reasonably have believed was Precise Roof's website to its own website represents a conscious recognition of the unlawful nature of this action and the serious consequences which could flow from them if they did not comply with this demand made in the cease & desist letter.

90. All of the foregoing actions were engaged in with the intent to unfairly compete against DeVito and his new business venture, Precise Roof Coating.

91. All of the foregoing actions and statements were engaged in with ill intent and with a malicious design to damage DeVito and Precise Roof Coating.

**WHEREFORE,** Plaintiffs, Matthew DeVito and Precise Roof Coating, respectfully request that judgment be entered in his favor against Defendant, US Coating, for damages, both actual (compensatory) and punitive, for equitable relief, for costs, and for any such other relief which the Court determines is proper.

### COUNT V
**(Lanham Act – Unfair Competition)**
**(DeVito and Precise Roof Coating Against US Coating)**

92. Plaintiffs, DeVito and Precise Roof Coating, hereby incorporate by reference the allegations contained in paragraphs 1-7, and 60-74 and 76-91, inclusive, as if fully set forth herein.

93. The efforts described constitute acts of unfair competition against Plaintiffs.

94. US Coating's actions were designed as a means of increasing Defendant's own sales volume at the expense of DeVito and Precise Roof Coating.

95. US Coating's deliberate conduct was likely to result in consumers purchasing its services in the mistaken belief that the services were those of Precise Roof Coating.

96. The acquisition of the preciseroofcoating.com domain name and the re-direction of any traffic or "hits" automatically to US Coating's own website, uscoatingspec.com, was, until it was terminated, likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of US Coating with

DeVito and his business, Precise Roof Coating, or as to the origin, sponsorship, or approval of US Coating's services, or commercial activities as being that of DeVito and Precise Roof Coating.

97. US Coating's action, as set forth, constitutes a false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

98. US Coating has and/or would have made substantial profits and/or gains to which it was not entitled.

99. By reason of the foregoing, Plaintiffs have been and would have been irreparably harmed and damaged.

100. Plaintiffs' remedies at law are inadequate to compensate for this harm and damage.

**WHEREFORE**, Plaintiffs, Matthew DeVito and Precise Roof Coating, demand judgment in their favor against Defendant, US Coating, for the following:

A. That Defendant and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting in concert or privity with Defendant, be permanently enjoined from engaging in trademark and/or tradename infringement, unfair competition, false designation of origin, or other activities that misappropriate DeVito and/or Precise Roof Coating's rights.

B. That Defendant be ordered to pay damages, including but not limited to Defendant's profits, and those damages be trebled under 15 U.S.C. § 1117.

C. That Defendant be compelled to account to Plaintiffs for any and all profits derived from its illegal acts complained of herein under 15 U.S.C. § 1117.

D.   That Defendant be ordered to pay Plaintiffs' costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws.

E.   Awarding such other relief as the Court may deem just and proper.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury as to all issues so triable.

_____
Stuart M. Address, Esq. (FBN 989606)
stuart@stuartaddresslaw.com
**Law Offices of Stuart M. Address, P.A.**
611 S.W. Federal Highway, Suite A
Stuart, Florida 34994
Telephone:   (772) 781-8003
Facsimile:   (772) 781-8005
Counsel for Plaintiff